IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **CARLOS ARMENTA, #743688** | § | |
| VS. | § | CIVIL ACTION NO. 5:04cv285 |
| **REGINALD STANLEY, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carlos Armenta, a prisoner confined at the Telford Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law and recommendations for the disposition of the cause of action.

**Plaintiff's Allegations**

The Plaintiff stated in the original complaint that he was assaulted by four inmates at the Telford Unit at about 8:50 p.m. on January 27, 2004. His injuries included a broken nose, dislocated right shoulder and serious injuries to his ribs on his right side. The Plaintiff alleges that the Defendants were deliberately indifferent to his serious medical needs. He stated that he received nothing more than Tylenol and Ibuprofen.

***Martinez* Report**

After reviewing the Plaintiff's claims, the Court considered methods of developing the facts in order to determine whether the lawsuit had potential merit or was frivolous. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986). Upon such consideration, the Court concluded that the most feasible course of action was to require prison officials to provide the Court with certain materials pertinent

to a just and fair adjudication of the matters herein presented. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (*cited with approval in Cay*); *Norton v. Dimanza*, 122 F.3d 286 (5th Cir. 1997).

The prison system, through the Office of the Attorney General of Texas, filed a *Martinez* Report (hereinafter "Report") on April 28, 2005. The Report included affidavits from Dr. Subhash A. Joshi and Dr. Reginald Stanley, along with the Plaintiff's relevant medical records, disciplinary records and grievance records.

Dr. Joshi specified in his affidavit that he is the Cluster Medical Director for the Northeast Texas Cluster for the University of Texas Medical Branch. He further specified that he has reviewed the Plaintiff's complaints about the medical care he received after the attack on January 27, 2004. The medical records reveal that the Plaintiff was examined by Nurse Griggs shortly after the incident at 8:20 p.m. She observed an injury to the Plaintiff's face, a small laceration to his upper and lower lips, several small contusions and swelling on the forehead, left cheek, left eye and nose bridge. Bruises were also noted on the face, especially on the left eye and on the nose bridge. The Plaintiff's respirations were clear, his cardiac examination was normal, neurological examination was normal, the musculoskeletal examination and both upper and lower extremities were normal. As per Nurse Protocol, Nurse Griggs gave him Tylenol for pain. Dr. Joshi stated in the affidavit that the medical records specify that Nurse Griggs reexamined the Plaintiff at 1 a.m. on January 28, 2004, and confirmed that he was stable.

Nurse Kennedy and Physician Assistant Pleasant evaluated the Plaintiff's condition on the morning of January 29, 2004. The Plaintiff reported no history of loss of consciousness, although there was blurring of the vision on the left side from the fight. The physical examination revealed that he was alert and oriented, had a nasal bone fracture, the fundii inside eyes were normal, brusing

and swelling of the left lower eye and his vision on the left side had decreased because of swelling. The Plaintiff was prescribed Ibuprofen 800 mg. twice a day for ten days and an evaluation to be scheduled within ten days for his vision. During this evaluation, P.A. Pleasant was the examiner and Dr. Stanley was acting as Spanish speaking interpreter.

      The Plaintiff was reevaluated on February 6, 2004. The Plaintiff's vital signs were normal, he had decreased vision and claimed Photophobia to the right eye. There was pain in the left eye, no eye trapping, no double vision and no air blowing into cheek. There was no injury to the Zygoma (cheek bone). The Plaintiff had difficulty breathing out of both sides of his nose. The Plaintiff reported soreness, mild to the right side of the chest, and he wanted restrictions to get out of the hoe squad. The Plaintiff's vision was checked and reviewed. There was no facial swelling and Echymosis and Subcutaneous Emphysema (evidence of air under the skin). There was no deformity of the nasal septum. P.A. Pleasant reviewed the x-rays that were performed on January 29, 2004, which revealed that a nasal bone was not well visualized in the lateral views. There was some irregularity of the nasal bone, which could represent a fracture, either recent or old. The nasal septum was in midline and the arch was symmetrical. Due to the clinical impression of the nasal fracture, P.A. Pleasant prescribed a normal saline nasal spray and a repeat of the visual acuity in two weeks.

      Dr. Joshi specified that the Plaintiff had multiple evaluations for his symptoms of pain pertaining to the same injury. These included a visual examination on February 21, 2004, a nurse evaluation and a provider chart review for visual acuity on February 23, 2004, nursing notes referring him to a provider for evaluation on March 3, 2004.

P.A. Freeman evaluated the Plaintiff on March 5, 2004, for complaints of right rib pain and shoulder muscle pain. The Plaintiff had spasms of the right trapezius muscle (muscle in the neck and medial to the shoulder). He was prescribed a muscle relaxant Chlorzoxazone 500 mg. twice a day to help relax the muscle and Ibuprofen 800 mg. twice a day for pain. P.A. Pleasant also recommended x-rays of the ribs and mandible. The x-rays were made on March 8, 2004. Dr. Stanley reviewed the x-rays on the same day. Dr. Stanley reviewed the x-rays again on March 15, 2004, when a report was received back from the radiologist. The chest x-ray was normal with no infiltrates and normal heart and lungs. The right ribs showed no recent fracture or bone pathology and no evidence of hemothorax or pneumothorax. The mandible in the back of the jaw showed no recent fracture or acute bone pathology. The Para-nasal sinuses were clear.

The Plaintiff submitted a sick call request for pain in his ribs, shoulder and nose on March 29, 2004. P.A. Pleasant examined him on April 2, 2004. His assessment was musculoskeletal pain without any fractures of the ribs or shoulder. P.A. Plesant prescribed him Feldene, which is a stronger anti-inflammatory agent, 20 mg. once a day for three months and continue the Ibuprofen 800 mg. twice a day. The Plaintiff was advised to stop fighting and was referred to a physical therapist. A physical therapist at the Beto Unit evaluated him on May 4, 2004 for right shoulder pain. The x-rays were normal. His evaluation revealed Fibrous cartilage on the lower right rib and pain on breathing. His clinical impression was Costochondritis, which is inflammation of the joint between the rib and cartilage in front of the chest. The Plaintiff was returned to the Telford Unit and placed back in Pre-Segregation lock-up on May 7, 2004.

Dr. Joshi noted that prior to the incident on January 27, 2004, the Plaintiff had been in a fight on November 10, 2003. The Plaintiff received a shoulder injury at that time. X-rays performed at

that time did not reveal any fracture or dislocation of the shoulder. Dr. Stanley prescribed anti-inflammatory medication on that occasion.

After reviewing all of medical care provided to the Plaintiff, Dr. Joshi expressed the opinion that the Plaintiff received not only compassionate care but more than what one would receive in a community such as New Boston, Texarkana or even Dallas.

Dr. Reginald Stanley stated in his affidavit that he is the Facility Medical Director at the Telford Unit. He specified that he is personally aware of the Plaintiff's medical care. He reiterated that the Plaintiff was seen within minutes of the altercation on January 27, 2004. A follow-up examination was performed later that night. Nurse Griggs performed the initial examination and gave the Plaintiff Tylenol per nursing protocol. She examined him again at 1 a.m. and confirmed that he was stable. The Plaintiff was examined by Nurse Kennedy and P.A. Pleasant on January 29, 2004. Dr. Stanley stated that he did not directly examine the Plaintiff on that occasion, and that he was only acting as an interpreter. X-rays were ordered, and the Plaintiff was diagnosed with a non-displaced nasal fracture. He was prescribed Ibuprofen and a nasal spray. His x-rays revealed no fracture of the ribs, mandible, jaw or chest. He was, nonetheless, referred to a physical therapist due to his persistent complaints.

Dr. Stanley stated that he subsequently personally evaluated the Plaintiff and ordered more x-rays. The x-rays showed no fracture of the ribs, chest, mandible or jaw. Furthermore, there were no complications in the chest. The shoulder injury was preexisting and there was no evidence of a broken or dislocated shoulder. The Plaintiff had a prior injury to the shoulder due to a fight on November 10, 2003. He had numerous evaluations for this complaint as well.

Dr. Stanley summarized the Plaintiff's medical care by noting that he had multiple evaluations pertaining to the injury of January 27, 2004. He received prompt medical attention and a follow-up evaluation. He received numerous anti-inflammatory agents and muscle relaxants. Moreover, he was evaluated by a physical therapist.

The Court has reviewed the medical records that were attached as Exhibit C. The records are consistent with the summaries provided by Doctors Joshi and Stanley. It is noted that when the Plaintiff complained that the Ibuprofen was not helping his shoulder, medical personnel gave him Chlorzoxazone and later Feldene. He was provided the additional medication even though x-rays clearly revealed nothing out of the ordinary.

## Plaintiff's Response

The Plaintiff filed a response on May 9, 2005. He disputed the claim that Nurse Griggs examined him again at 1 a.m. on January 28, 2004. He believed that the care provided was inadequate since he had a nose bleed, dislocated shoulder and serious injuries to his right ribs. He also complained about the length of time it took to receive x-rays, and the failure initially to take x-rays of his ribs and shoulder. He asserted that Dr. Stanley was examining him on January 29, 2004, as opposed to acting only as an interpreter. The Plaintiff reiterated that his nose bled for five hours after the fight and that x-rays subsequently revealed a fracture. He again argued that the care and medication was inadequate and that medical personnel took too long to provide care, such as employing x-rays.

## Discussion and Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429

U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' *Id.* Furthermore the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.' *Estelle*, 429 U.S. at 107. And, the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

In the present case, the medical records as explained by the doctors reveal that the Plaintiff received abundant medical care. Medical personnel did not ignore him. He received extensive medication even though the x-rays never showed any abnormalities except for the fracture to his nose. It should be further noted that the x-rays revealed that he sustained only a non-displaced nasal fracture. When the Plaintiff complained that he was still experiencing pain despite the medication provided to him, medical personnel gave him stronger medication. The additional medication was

provided despite the lack of objective evidence of injuries as shown on x-rays. Medical personnel also issued orders for physical therapy. Medical personnel clearly were responsive to his medical needs. The facts as alleged and developed do not support an inference of deliberate indifference.

The Plaintiff also complained about delays, but a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The facts as alleged and developed do not show that the Plaintiff suffered substantial harm due to any delays in receiving medical care or x-rays. Moreover, there is no evidence of substantial harm due to deliberate indifference.

In conclusion, the facts as alleged and developed via the *Martinez* Report reveal that medical personnel were responsive to the Plaintiff's medical needs. Medical care was provided as deemed appropriate. The facts as alleged and developed do not support an inference that anyone was deliberately indifferent to the Plaintiff's serious medical needs. The Plaintiff's claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## Recommendation

It is therefore recommended that the complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

## Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de*

*novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 16th day of May, 2005.**

/s/ Caroline M. Craven
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE